UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

**14 CV 6152**

POINT EIGHT POWER, INC.,

                Plaintiff,

  --vs.--

PACS INDUSTRIES, INC. AND PACS
SWITCHGEAR, LLC,

                Defendants.

-----------------------------------------------------------X

CIVIL ACTION NO. _____

COMPLAINT

JUDGE WOODS

Plaintiff Point Eight Power, Inc. ("Point Eight Power"), by and through its undersigned counsel, as and for its Complaint against Defendants, PACS Industries, Inc. ("PACS, Inc.") and PACS Switchgear, LLC ("PACS Switchgear" collectively, "PACS"), alleges as follows:

## NATURE OF THE CASE

1. This lawsuit involves an apparent attempt by PACS to wrongfully terminate on ongoing and valuable license agreement based on purported breaches of that agreement which is between PACS, as licensor, and Point Eight Power, as licensee, for arc resistant metalclad switchgear technology.

2. Based on allegations which, even if true, would not provide the basis for termination of the agreement, PACS on July 8, 2014 provided purported 30-day notice to Point Eight Power to cure the alleged breaches as a prerequisite to terminating the license. The cure period runs on or about August 7, 2014.

3. Specifically, PACS has alleged, without support, that certain former PACS employees misappropriated confidential information belonging to PACS and provided this information to Point Eight Power. Point Eight Power denies this allegation and states that it is not in possession of <u>any</u> confidential information, trade secrets, or other proprietary information

belonging to PACS that it is not otherwise authorized to have under the express terms of the parties' license agreement.

4. Moreover, PACS subsequently and orally asserted that Point Eight Power has breached the license agreement based on its belief that Point Eight Power is operating outside the bounds of its license. The plain and unambiguous language of the agreement itself unquestionably refutes PACS' interpretation of the scope of the contract.

5. Were PACS to follow through with its threat to terminate the license agreement with Point Eight Power on August 7, 2014, Point Eight Power would invariably suffer immediate irreparable harm, including potential loss of 20% to 30% of its business, loss of good will, devastating layoffs, and severe damage to its business reputation for which there is no adequate remedy of law.

6. Accordingly, Point Eight Power brings this action seeking a declaration that Point Eight Power has not breached the parties' license agreement and to obtain temporary restraints and a preliminary injunction to restrain PACS from acting on its threat to terminate the license agreement, thus preserving the *status quo* pending final resolution of this matter.

**THE PARTIES**

7. Point Eight Power, Inc. is a Louisiana corporation with its principal place of business located at 2550 Belle Chase Highway, Gretna, Louisiana 70053.

8. PACS Industries, Inc. is a corporation organized and existing under the laws of the State of New York, with its principal place of business located at 1211 Stewart Avenue, Bethpage, New York 11714.

9. PACS Switchgear, LLC is a limited liability company organized and existing under the laws of the State of New York, with its principal place of business located at 1211

Stewart Avenue, Bethpage, New York 11714. Upon information and belief, none of PACS Switchgears' members are domiciled in Louisiana.

## JURISDICTION AND VENUE

10. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because this is an action between citizens of different States and the amount in controversy exceeds $75,000.

11. Personal jurisdiction and venue are proper because, in the agreement at issue in this action, the parties consented to the jurisdiction of any court in the State of New York with any matter relating to the underlying agreement.

## BACKGROUND

12. This lawsuit arises out of an alleged breach of a license agreement between PACS, as licensor dated July 29, 2010 (the "License") and Point Eight Power, as licensee, for arc resistant metalclad switchgear. A copy of the License is annexed hereto as Exhibit A and incorporated herein by reference

13. Switchgear is designed to protect and isolate electrical equipment by allowing large currents and power levels to be safely controlled. Switchgear is used to protect power system networks, industrial works, industrial projects, and domestic and commercial buildings. When controlling power levels, there is always the potential for an electric arc fault. An electric arc is an electrical breakdown that produces a plasma discharge, resulting in a current through a normally nonconductive media, such as air. In order to improve safety for personnel working in close proximity to the power systems, arc resistant switchgear should be used whenever personnel may potentially be exposed to an electric arc. Arc resistant metal-clad switchgear, such as those at issue in the instant dispute, channel energy released during an internal arc fault away from personnel and adjacent equipment into a vertical isolation plenum where it is contained and vented safely.

14. According to PACS' website, it has been designing and manufacturing electrical power distribution metalclad switchgear and companion products since 1972. Further, PACS designs and manufactures a complete product line of arc resistant switchgear.

15. PACS developed certain arc resistant metalclad switchgear[1] (hereinafter, the "Products") based on the proprietary technology embodied in the claims of US patent 7,236,352 (the "Patent"), entitled "Arc Resistant Switchgear having Dedicated Vertical Plenums" and PACS' proprietary technology, business information, process and manufacturing know-how, engineering, operational and maintenance information, specifications, marketing and end-use information, analytical and testing methods, as well as other technical knowledge relating to its arc resistant switchgear (the "Know-How").

16. Because PACS lacked the infrastructure, resources, expertise, and/or customer relationships needed to succeed in sales of its arc resistant switch-gear technology on its own, PACS agreed to enter into a strategic alliance with Point Eight Power which led to the License with PACS Industries, Inc. PACS Industries subsequently assigned the License to PACS Switchgear, LLC. A copy of the Assignment Agreement dated May 9, 2014 is attached hereto as Exhibit B and incorporated by reference. As a matter of law, PACS Industries, as assignor, remains liable for the obligations of PACs under the License.

17. Point Eight Power builds custom electrical switchgear for marine, petrochemical, offshore oil and gas, heavy industry, commercial, and government and military applications, among other things.

---

[1] Specifically, arc resistant metalclad switchgear in one high and two high configurations, designed and tested to ANSI c37.20.07 for 500mSec, Type 1 and Type 2, addendums B/C with ratings of 5kv, 15kV, 38kV and interrupting ratings through 63kA @ 5kV and 15kV, and through 40kA @ 38kV.

18. The License has a seven-year term and granted Point Eight Power a world-wide license to manufacture, use, sell, offer for sale, and export the Products, as well as to use PACS' Know-How in connection with the manufacturing of the Products.

19. The License grants an exclusive license to Point Eight Power for the Products with respect to the fields of marine, oil and gas exploration, oil and gas production, and oil and gas transportation and storage (the "Exclusive Fields of Use"), expressly excludes certain domestic oil refineries and the rail road industry (the "Restricted Fields of Use"), and is non-exclusive with respect to all other fields. The License Agreement has an initial term that expires on July 29, 2017. (Exhibit A, pp. 2-3, 10).

20. During its so-far four-year tenure as licensee, Point Eight Power has performed well and its business has grown tremendously, with annual revenues up 19% over that tenure. Approximately 20% to 30% of Point Eight Power's recent business, direct and indirect, is reliant on its arc resistant switchgear products.

21. PACS has also benefited from the License. Point Eight Power has paid PACS $2.1 million for its rights under the seven year License, and $29,105.90 in additional royalties.

## THE ALLEGED BREACH

22. Despite the mutual success that both parties have enjoyed by entering into this License, PACS is apparently now looking for an excuse to terminate it when it has no real basis.

23. Upon information and belief, PACS is seeking to keep the millions that Point Eight Power has paid to it for the License, while giving itself the opportunity to enter into new license agreements with Point Eight Power's competitors and/or potentially take over the business for itself that Point Eight Power has worked to develop under the License.

24.     Pursuant to Paragraph 8.2 of the License, PACS can terminate the agreement in the event of a breach if it provides 30-days' advance notice to Point Eight Power of the breach and Point Eight Power fails to cure same.

25.     No breach has occurred.

26.     In a July 8, 2014, letter from PACS' counsel to Point Eight Power (the "July 8th Letter"), PACS made allegations of Point Eight Power's alleged breaches, allegations that, even if true, would not entitle PACS to cancel the License and keep the millions that Point Eight Power has paid to it. These allegations came with no advance warning and were intended to put Point Eight Power on notice of an alleged breach with a thirty-day opportunity to cure. A copy of the July 8th letter is annexed hereto as Exhibit C and incorporated herein by reference.

27.     Specifically, PACS' letter expresses dissatisfaction with the fact that Point Eight Power hired four former PACS employees, namely, Jimmy Tichenor, Bob Leo, Brian Marcum and Miguel Chacon (the "Employees"), and further states PACS' belief these Employees improperly removed and disclosed to Point Eight Power certain confidential information belonging to PACS.

28.     Significantly, the License authorizes the use of PACS' patent and Know-How, which is utilized by Point Eight Power in its performance of the license. (Exhibit A, p. 3). Accordingly, Point Eight Power is authorized to utilize certain confidential information of PACS', its obligations under Article VI of the License being to keep that information confidential.

29.     PACS' allegations in the July 8th Letter (Exhibit C) that Point Eight Power materially breached the License are baseless. They rest on demonstrably false factual assertions.

30.     During a July 16, 2014, telephone conference between counsel and certain representatives for the parties, PACS refused to provide Point Eight Power with specifics as to what information was removed and disclosed to Point Eight Power which was not covered under the License, thus denying Point Eight Power the opportunity to cure.

31.     During this same call, PACS further advised that it believed that Point Eight Power had breached the License by operating in fields other than the Exclusive Fields of Use. Again, PACS has failed and refused to specify what fields of use or customers if was referring to, despite demand.

32.     In a July 23, 2014 letter (the "July 23rd Letter"), Point Eight Power's counsel expressly advised PACS that it did not receive any unauthorized information from the Employees, sought to assure PACS that no breach had occurred, and requested specific information from PACS as to the specific bases for the claimed breach. PACS failed to respond to this letter or subsequent telephone messages regarding same. To this day, Point Eight Power has no knowledge as to what specific unauthorized information it purportedly received or how it purportedly breached the License. A copy of the July 23rd Letter is annexed hereto as Exhibit D and incorporated herein by reference.

33.     Based on PACS' continued refusal to provide Point Eight Power specifics of the alleged breach, it has become clear that PACS' allegations are a pretext to terminate Point Eight Power's rights under the License by giving 30-days "notice to cure" that is too vague for Point Eight to comply with, refusing to advise what indeed heeds to be cured, and then terminating the License.

34.     These and other wrongful actions taken by PACS threaten to cause Point Eight Power immediate, irreparable harm by denying it access to specialized arc resistant technology

not readily available in the marketplace and which Point Eight Power has incorporated into current and future switchgear for its customers.

35. Accordingly, Point Eight Power brings this action to obtain a temporary restraining order and preliminary injunction to restrain PACS from acting on its purported termination, thus preserving the *status quo* and allow this dispute to be litigated. As demonstrated below, the criteria for obtaining such an injunction under New York law are satisfied here.

### INFORMATION FROM FORMER PACS EMPLOYEES

36. PACS' July 8th letter is vague with respect to what information it believes was improperly taken by the Employees and provided to Point Eight Power. It includes heavily qualified statements such as, "my client has reason to believe" and "may have removed."

37. There are no allegations that any confidential information of PACS was shared with third parties in violation of the license.

38. For this reason, Point Eight Power has, on multiple occasions, directly asked PACS to provide it with any information it may have as to what information it believes was misappropriated and provided to Point Eight Power so that it can cure the purported breach. PACS has refused to provide Point Eight Power with any specifics.

39. Point Eight Power conducted its own internal investigation and has spoken with each of the Employees named in PACS' letter. Point Eight Power has found absolutely no basis for the allegations. Point Eight Power denies that the Employees wrongfully and unlawfully removed or misappropriated from PACS and disclosed to Point Eight Power certain confidential information, trade secrets, and/or other proprietary information.

40. In short, the only information that Point Eight Power has in its possession pertaining to PACS' technology is the Know-How that Point Eight Power paid for and is entitled to have pursuant to the terms of its License with PACS.

### OPERATIONS OUTSIDE OF THE EXCLUSIVE FIELDS OF USE

41. As noted above, Point Eight Power held a conference call with certain representatives for PACS, including its former chief restructuring officer, Mark Bronstein.

42. Mr. Bronstein insisted, again, without specifics, that Point Eight Power was exceeding the scope of its License by operating in areas beyond its Exclusive Fields of Use.

43. The License, however, does not limit Point Eight Power to solely operating within its Exclusive Fields of Use. Instead, the purpose of the "Exclusive Fields of Use" clause is to prohibit *PACS* from licensing the Products to third-parties within Point Eight Power's Exclusive Fields of Use. PACS has an exclusive Fields of Use for: (a) railroads and (b) any Shell or Exxon/Mobil refinery other than the Shell Chemical refinery in Norco, LA. The License otherwise grants a non-exclusive license to Point Eight Power to operate in any other field. Specifically, the License reads as follows:

> Licensor hereby grants to Licensee a world-wide license to manufacture, use, sell, offer for sale and export the Product, and to use the Know-How, in connection with the manufacturing and marketing of the Product according to the specifications provided by Licensor for time to time (the "License"). The License shall be deemed to be an exclusive license to Licensee with respect to the following Fields of Use marine (commercial and military), oil and gas exploration, oil and gas production, and oil and gas transportation and storage (the "Exclusive Fields of Use"). During the term of this Agreement, Licensor may not, nor may Licensor permit any affiliate of Licensor or any other licensee with respect to the Product and/or the Know-How to, sell the Product, offer the Product for sale, or otherwise manufacture or market the Product for sale to or use by any Person operating in an industry included within the Exclusive Fields of Use whether within or outside of the United States. **The License shall be deemed to be nonexclusive to Licensee within any other Field of Use other than a Restricted FOU (as defined below).**

(Exhibit A, p. 3) (emphasis added).

44. It is evident from the unambiguous language of the License that Point Eight Power has a world-wide license to manufacture, use, sell, offer for sale, and export the Product in any field (other than those expressly restricted), and that PACS is prohibited from encroaching on Point Eight Power's exclusive fields of marine, oil and gas exploration, oil and gas production, and oil and gas transportation and storage by selling or licensing the Product within these fields.

45. For this reason, PACS' attempt to terminate the License under this pretense is improper.

## COUNT I

### (Declaration of Non-Breach of Contract)

46. Point Eight Power re-alleges and incorporates by reference the foregoing allegations, as if fully set forth herein.

47. Point Eight Power reasonably apprehends that PACS will imminently terminate the License and/or file suit alleging that Point Eight Power committed a breach of the terms of same.

48. A case of actual controversy exists between Point Eight Power and PACS with respect to the parties' performance of obligations under the License within the meaning of 28 U.S.C. §2201.

49. Absent a declaration that Point Eight Power has not committed a breach of the License, PACS will continue to wrongfully assert that Point Eight Power is in breach of the agreement and will seek to terminate same, following the 30 days after PACS' July 8th Letter, thereby causing Point Eight Power irreparable injury.

50. The terms of the License have not been breached by Point Eight Power. Point Eight Power is entitled to a declaration to that effect.

## COUNT II

### (Injunctive Relief)

51. Point Eight Power re-alleges and incorporates by reference the foregoing allegations, as if fully set forth herein.

52. PACS has threatened to terminate its agreements with Point Eight Power and has expressly stated that these alleged violations entitle it to injunctive relief, recovery of profits and other compensatory damages, punitive damages, attorneys' fees, litigation costs, and expenses.

53. PACS, by reason of the foregoing allegations, is unlikely to succeed on the merits in this action.

54. The balance of equities tips completely in favor of Point Eight Power. PACS has asserted baseless allegations of a material breach in an overt effort to terminate the License while keeping the substantial sums that Point Eight Power has paid PACS pursuant to same. PACS will suffer no harm if the *status quo* is maintained pending resolution of the instant dispute.

55. PACS' demonstrably false allegations of breach, and refusal to provide Point Eight Power with specifics concerning the alleged breach so that it may cure same, threatens to cause Point Eight Power irreparable harm.

56. Indeed, unless PACS is enjoined from terminating the License, thereby maintaining the *status quo*, Point Eight Power will suffer irreparable harm because:

    a) Point Eight Power will lose its negotiated right as the exclusive manufacturer and seller of the Products within the Exclusive Fields of Use, a right to which there is no calculable amount of damages to compensate Point Eight Power for its loss;

    b) PACS' actions will cause Point Eight Power to lose a significant portion of its business and many of its major customers, cause it to breach agreements with its

customers and suppliers, lead to loss of good will, substantial layoffs, and lost business reputation; and

c)  Point Eight Power has not been provided with sufficient advance notice to prepare for a post-termination situation in which PACS will be a competitor rather than a partner.

57. As evidenced by the foregoing, money damages will not be able to compensate Point Eight Power for the damage that will ensue to its business and reputation.

58. As the party seeking to terminate the License for alleged material breaches, PACS bears the burden of proving that Point Eight Power has, in fact, materially breached the License, and that its purported termination of that Agreement is valid.

59. PACS will be unable to meet its burden of proof in this regard because PACS cannot demonstrate that Point Eight Power possesses any information that it is not already authorized to have pursuant to the terms of the License and because Point Eight Power has only operated in fields in which it is authorized by the License.

60. Point Eight Power is further entitled to permanent injunctive relief enjoining PACS from taking any actions or making any statements inconsistent with Point Eight Power's rights with respect to the License.

**WHEREFORE,** Point Eight Power, Inc. requests that the Court enter judgment in its favor and against PACS Switchgear, LLC, as follows:

a) Declaring that Point Eight Power has not breached the terms of the License;

b) Permanently enjoining PACS from terminating the License based on its allegations that Point Eight Power is in possession of unauthorized confidential information or for any other reason set forth in the July 8th Letter;

c) Permanently Enjoining PACS from terminating the License based on its allegations that Point Eight Power is operating outside of the scope of the License;

d) Enjoining PACS from taking any actions inconsistent with Point Eight Power's rights with respect to the License; and

e) Ordering such other and further relief the Court may deem just and proper.

August 6, 2014

Respectfully submitted,

SEWARD & KISSEL LLP

/s/ Bruce G. Paulsen
Bruce G. Paulsen (BP 9563)
Jeffrey M. Dine (JD 0545)
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

-And-

**PRO HAC VICE ADMISSION
TO BE APPLIED FOR:**
Scott R. Wheaton, Jr. (La Bar #13395)
Stewart F. Peck (La Bar #10403)
Brad E. Harrigan (La Bar # 29592)
LUGENBUHL, WHEATON, PECK, RANKIN &
    HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195

*Attorneys for Point Eight Power, Inc.*

SK 99159 0020 6069886 v2